IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEYAWN COOK,

        Plaintiff,                    No. 2:08-cv-1162-FCD-JFM (PC)

    vs.

CALIFORNIA DEPARTMENT
OF CORRECTIONS, et al.,          <u>ORDER AND</u>

        Defendants.          <u>FINDINGS & RECOMMENDATIONS</u>

                               /

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff claims that his rights under the Eighth Amendment were violated by deliberate indifference to his safety and to his serious medical needs.  This matter is before the court on defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  In addition, both parties have moved to modify the dates set in the scheduling order filed on March 27, 2009.

STANDARDS FOR A MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO FED.R.CIV.P. 12(C)

        Federal Rule of Civil Procedure 12(c) provides:

> After the pleadings are closed--but early enough not to delay trial--
> a party may move for judgment on the pleadings.

Fed. R. Civ. P. 12(c).  In considering a motion for judgment on the pleadings the court accepts

1

1  "all factual allegations in the complaint as true" and construes the allegations "in the light most
2  favorable to the non-moving party." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009)
3  (citing Turner v. Cook, 362 F.3d 1219, 1225 (9th Cir. 2004)). Judgment on the pleadings is
4  appropriate "when there is no issue of material fact in dispute, and the moving party is entitled to
5  judgment as a matter of law." Fleming v. Pickard, id. (citing Heliotrope Gen., Inc. v. Ford
6  Motor Co., 189 F.3d 971, 979 (9th Cir. 1999)).

ALLEGATIONS OF THE COMPLAINT

Plaintiff's complaint contains the following allegations. At all times relevant to this action, plaintiff was a state prisoner housed at California State Prison-Sacramento (CSP-Sacramento). On May 20, 2006, while headed to a shower on the upper tier of his cell block, plaintiff slipped in a puddle of water, falling on his back and slamming his head to the ground. It had been raining the previous day and on the early morning of May 20, 2006, and the lighting was "very dim" in the cellblock. There were no caution cones or wet floor signs posted on the tier, nor did staff give the inmates any warnings about the wet floor, nor were inmate tier tenders allowed to clean up the water. Defendant Easley was charged with taking reasonable steps to ensure inmate safety in the cellblock and the unsafe conditions must have been obvious to defendant Easley because said defendant had provided food to inmates in their cells during the relevant period of time.

Plaintiff was taken to the medical clinic. He was given a neck brace and told that he had sustained a concussion. He was given a shot and 400 mgs. of Ibuprofen, told to lie in the clinic for thirty minutes, and sent back to his cell with a pack and extra ibuprofen. He continued to experience "slight back pain and extremely painful migraine headaches." Complaint, filed May 27, 2008, at 6. He submitted requests for medical attention that went unanswered. On May 25, 2006, he was seen but not provided any care except the taking of his vital signs.

On June 12, 2006, plaintiff saw defendant Bal, who counseled plaintiff and gave him a drug that did not stop the headache. On June 13, 2006, plaintiff was interviewed by

2

defendant Wedell, who gave him no further treatment.  Defendant O'Brian screened out plaintiff's inmate grievance, and defendant Grannis denied plaintiff's grievance at the Director's Level of Review.  In September 2006, plaintiff was transferred to Ironwood State Prison, where he continued to seek medical treatment.

## DEFENDANTS' MOTION

I. <u>Defendant Easley</u>

Defendant Easley seeks judgment on the pleadings on the ground that plaintiff's allegations do not state a cognizable claim against him for violation of plaintiff's rights under the Eighth Amendment.  Specifically, defendant contends that the allegations against him are conclusory and include neither any specific allegation of his personal involvement in the events complained of nor "any factual assertion that Defendant Easley had any knowledge of any risk to plaintiff's health and safety."  Motion for Judgment on the Pleadings, filed June 19, 2009, at 5.

In relevant part, plaintiff's complaint contains the following allegations against defendant Easley:

> On May 19th 2006 and in the early morning of Ma [sic] 20th 2006, it had been raining.  On said date, we inmates were on modified lockdown.  On the above said date (May 20th) after breakfast, Second Watch (2/w) Control Tower Officer announced and ran (modified) lockdown showers, one cell at a time.  Lighting was very dim in (a) Section of 7 Block.  When it was my cellie and I turn for the showers, plaintiff came out with full clothing on.  As I headed for the stairs to go to the upper tier shower, I slipped in a puddle or water unbeknownst to myself.  I fell on my back and head slammed to the ground as a result of the first tier by the stairs.  I must have went out or was unconscious because when I cam to I was being administered aid by C-facility medical staff and corrections officers.
>
> There were no caution cones or wet floor signs posted on the tier or in the dayroom.  Nor did staff give us warning before allowing inmates to proceed out of cell for lockdown showers.  Nor did they allow any 7 Block tier tender (porter) to get water up.  Having no regard for the health and safety of staff or inmates.  Never taking any reasonable measure to guarantee and provide humane conditions of confinement.  The Correctional Officer Easley and John Do (Tower-7 BLK) must have purposely ignored the unsafe conditions which were obvious and caused my personal injury.

> . . . Correctional Officer Easley and John Doe (Tower Officer) are both charged with the obligation to reasonable measures to ensure and guarantee the safety of inmates (including myself) themselves. The above mentioned incident was obvious and the officers had to be very aware of water being on the tier, being that they cell fed inmates during that period of time.

Complaint at 5.

To state an Eighth Amendment claim based on deliberate indifference to safety, a plaintiff must allege two elements: that he was incarcerated under conditions posing a substantial risk of serious harm; and that the defendant was deliberately indifferent to that risk. Farmer v. Brennan, 511 U.S. 825, 834 (1994). "'Deliberate indifference' is [shown] only when "the official knows of and disregards and excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.'" Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (quoting Farmer, at 837).

Plaintiff's allegations are insufficient to state a cognizable claim for relief against defendant Easley based on alleged deliberate indifference to plaintiff's safety. Plaintiff's allegation that the risk from the water was "obvious" is belied by plaintiff's allegation that plaintiff did not see the water that he allegedly slipped on. Moreover, the allegation that defendant Easley had traversed the same area during the same period of time carrying food to inmates in their cells undermines any possibility of showing that defendant Easley drew an inference that a substantial risk of harm was posed by the water.

For the foregoing reasons, defendants' motion for judgment on the pleadings should be granted as to plaintiff's claim against defendant Easley.

II. Defendant O'Brian

Defendant O'Brian seeks judgment on the pleadings on the ground that the allegations against him do not rise to the level of a violation of plaintiff's constitutional rights. Plaintiff alleges that he filed a grievance following his slip and fall on the tier, and that defendant

4

O'Brian "forced [plaintiff] to take back and rewrite [his] initial (602) Grievance Form and separate [his] complaint" and that defendant O'Brian "later tried to frustrate [him] and deter [him] by ruthlessly screening out [his] complaint for no reason." Complaint at 6. Plaintiff alleges that this violated his right to pursue his prison grievance. However, plaintiff subsequently alleges that grievance was ultimately partially granted at the first and second levels of administrative review and that he was able to pursue his grievance through the third and final Director's Level of Review. See id. These allegations belie plaintiff's claim that defendant O'Brian's acts actually interfered with plaintiff's ability to pursue his inmate grievance through all levels of review. For that reason, defendant O'Brian is entitled to judgment on the pleadings.

III. Defendant Grannis

Defendant Grannis seeks dismissal on the ground that the sole allegation against her is too vague and conclusory to state a cognizable claim for relief. Plaintiff's only allegation against defendant Grannis is that she conspired with another individual to deny plaintiff's grievance at the third and final level of administrative review. Plaintiff does not allege any facts which would support a finding that this denial contributed in any way to a violation of plaintiff's constitutional rights. Defendant Grannis is entitled to judgment on the pleadings.

IV. Defendants Bal and Wedell

Defendants Bal and Wedell seek dismissal on the ground that plaintiff has failed to allege any facts which suggest that these defendants violated his rights under the Eighth Amendment in connection with the provision of medical care to plaintiff, or that any delay in receiving medical care cause by their acts or omissions caused harm to plaintiff.

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Such a claim has two elements; "the seriousness of the prisoner's medical need and the nature of

/////

the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991).

A medical need is "serious" "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, at 1059 (quoting Estelle v. Gamble, 429 U.S. at 104, 97 S.Ct. at 291). Examples of indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60.

In order to state an Eighth Amendment claim, plaintiff must also allege facts that suggest that defendants responded to the serious medical need with deliberate indifference. Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Hutchinson v. U.S., 838 F.2d 390, 394 (9th Cir. 1988). A difference of opinion regarding a course of treatment, without more, does not rise to the level of deliberate indifference. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Plaintiff's complaint contains the following allegations relevant to his claim against Drs. Bal and Wedell:

> [Following the fall] I was eventually taken to C-Facility Clinic on an emergency medical gurney by John Doe (FNP/MTA) and responding officers when the panic button was enacted.
>
> I had a neckbrace placed around my neck and was told by John Doe MTA after checkin [sic] my pupils that I sustained a concussion. And that is why I had a headache. After being taken to the C-Facility Clinic, I was given some type of shot and given 400 mgs. of Ibuprofen.
>
> Thereafter I was instructed to continue to lay on clinic bed for about 30 minutes then sent back to the 7 building with an [sic] pack and extra Ibuprofen (440 MG.) . . . . I submitted CDC 7362 Medical Form on the day of May 23, 2006 and due to the continued slight back pain and extremely painful migraine headaches to no avail. I continued to submit these forms and received no response, merely treatment that was cursory at best. . . .

> Soon thereafter I put in numerous 7362 Forms on 5-27-06 and 06-08-06. Finally being counselled [sic] instead of being treated by defendant Dr. Bal while I needlessly suffered great pains from headaches resulting from said injury. As I continued in 7362 Forms and complained and asks [sic] for treatment, I was merely given aspirin and on 06-12-06, I was given another drug that didn't stop the pain of the headaches.
>
> The very next day (06-13-06), I was again merely interviewed by defendant Dr. Wedell, and nothing further except the run around which basically amounts to grossly inadequate care by all named defendants. . . .
>
> On 09-26-06 I was then transferred to Ironwood State Prison where I am trying to seek adequate medical care while still suffering emotional, mental and physical torture as a result.

Complaint at 6. Even viewed in the light most favorable to plaintiff, the allegations of the complaint present no more than a difference of opinion between plaintiff and defendants Bal and Wedell concerning the course of treatment of his injuries. Consequently, the allegations are insufficient to state a cognizable claim for violation of plaintiff's rights under the Eighth Amendment against these two defendants and they are entitled to judgment on the pleadings.

In light of the recommendations set forth herein, the motions of the parties to modify the scheduling order will be denied as unnecessary.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendants' September 11, 2009 motion to modify the discovery and scheduling order is denied;

2. Plaintiff's September 16, 2009 motion for an extension of the deadlines set in the discovery and scheduling order is denied; and

IT IS HEREBY RECOMMENDED that defendants' June 19, 2009 motion for judgment on the pleadings be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

1  objections with the court and serve a copy on all parties.  Such a document should be captioned
2  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
3  objections shall be filed and served within fourteen days after service of the objections.  The
4  parties are advised that failure to file objections within the specified time may waive the right to
5  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
6  DATED: January 12, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

12
cook1162.mjop